## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY MCLAUGHLIN and,
CAROL MCLAUGHLIN

      **Plaintiffs**

      **v.**

FORTY FORT BOROUGH and FORTY
FORT BOROUGH ZONING HEARING
BOARD

      **Defendants**

:
:
:
:
:
:
:
:
:
:
:
:
:
:

**3:13-CV-16**
**(JUDGE MARIANI)**

**FILED**
**SCRANTON**

AUG – 9 2013

PER_____
    **DEPUTY CLERK**

### MEMORANDUM OPINION

### I.  Introduction

Before the Court is Defendants' Motion to Dismiss, or in the alternative, for Summary

Judgment (Doc. 3).  For the reasons set forth below, the Court will grant Defendants' motion

to dismiss, but grant Plaintiffs leave to amend certain portions of Count III and to allege a

cause of action against Cynthia Millington Brandreth, Mark Millington, Michelle Millington,

and Scott Millington (collectively, "Millingtons") t/d/b/a Compass Rose Group, and May

Brands, LLC.

### II.  Factual Allegations

At one time both plaintiffs, the McLaughlins, resided in Forty Fort Borough "adjacent

to the property currently used as a Dunkin Donuts/Baskin Robbins, located specifically at

1312 Wyoming Avenue, Kingston, County of Luzerne, Commonwealth of Pennsylvania

18704." (Amended Complaint ("Am. Compl."), Doc. 1-2, Ex. C, at ¶¶ 1, 5). Plaintiffs purchased their home in December 2005. (Dec. 14, 2005 Deed, Doc. 3, Ex. 4).[1]

Prior to the McLaughlins' purchase of their home, the "Compass Rose Group ["CRG"] filed an Application for a Zoning Permit with Forty Fort seeking to erect a structure on lands located at 1312 Wyoming Avenue," on approximately February 14, 2005. (*Id.* at ¶ 7). According to Plaintiffs, the Application was deficient in numerous respects (*id.* at ¶¶ 9-16), and accordingly, "[it] was denied by Forty Fort through its Zoning Officer, though no records exist to show a denial." (*Id.* at ¶ 17).

Plaintiffs claim that although CRG never "request[ed] an appeal to the ZHB [Zoning Hearing Board]," the Board "entertained issues surrounding the CRG's application for zoning Permit . . . because there was a 'request from the Zoning Officer to discuss/resolve several concerns.'" (*Id.* at ¶¶ 18-20). The Board entertained this appeal contrary to its own established Ordinances which allow only an applicant to appeal. (*Id.* at ¶¶ 21-24). Thus, according to Plaintiffs, because the Zoning Officer raised some concerns *sua sponte* without an appeal from CRG, Defendants "have willfully and intentionally permitted the violation of their own Zoning Ordinance by hearing a matter that was never appealed by the applicant" as required by Forty Fort Ordinance 9.240. (*Id.* at ¶ 25).

Additionally, despite the lack of an appeal from CRG, Defendants are accused of having known that CRG would request a variance "as confirmed by the 'Public Notice'

---

[1] Defendants provided a copy of the Deed as an exhibit to their Motion to Dismiss. Plaintiffs confirmed that they obtained ownership of their home in their Brief in Opposition. (*See* Doc. 8, at 2).

placed in the *Citizens Voice* Newspaper on February 17, 2005 and February 22, 2005." (*Id.* at ¶ 29). According to Plaintiffs, "[t]here are no documents that exist to show or identify what, exactly, the Compass Rose Group was seeking a variance from," and yet the Board "permitted this matter to proceed to a hearing." (*Id.* at ¶¶ 31-32). This hearing took place on March 1, 2005, "though the records, including the Minutes of the Zoning Hearing Board Meeting do not indicate the basis of the variance request, what zoning ordinances were varied, nor the basis and factors for granting the variance." (*Id.* at ¶ 33).

Plaintiffs further aver that the Board granted a variance to CRG despite not making any findings of record as required by Ordinance. (*Id.* at ¶¶ 34-36, 43). Later, however, the Board claimed that "no variance was sought" at the March 1, 2005 Board meeting. (*Id.* at ¶ 37). "Forty Fort is now asserting that the Defendants never granted a variance for the authorization to construct a Dunkin' Donuts, despite clear and obvious information to the contrary." (*Id.* at ¶ 38). Plaintiffs also allege that the Minutes from the March 1, 2005 meeting "reflect that the neighbors were notified of the Application, yet Forty Fort and the ZHB have confirmed in writing that" the "[c]urrent Zoning Officer is unaware of such list." (*Id.* at ¶ 40; Doc. 3, Ex. D to Ex. 3, at ¶ 6). Finally, contrary to the Borough Ordinance and the Municipalities Planning Code, the Board never issued a "written decision" or created a "stenographic record of the proceedings." (Am. Compl. at ¶ 42).

On or about June 23, 2005, CRG "filed a Zoning Application with Forty Fort Borough requesting Land Development Approval for the construction of a 'Donut/Ice Cream Store'

located on or about 1300 Wyoming Avenue, Forty Fort." (*Id*. at ¶ 47). Plaintiffs claim this application contained several discrepancies from CRG's previous zoning application. (*Id*. at ¶¶ 48-50). Plaintiff alleges that "the Zoning Application of June, 2005, [again] does not identify whether the Application was approved or denied, nor if it was appealed to the Planning Commission." (*Id*. at ¶ 51).

Because the proposed Donut/Ice Cream Store was not a permitted use under the Borough Zoning Ordinance, Plaintiffs argue that CRG was required to obtain "approval for the Dunkin' Donuts to only be permitted by Special Exception pursuant to Section 11.146 of the Forty Fort Borough Zoning Ordinance." (*Id*. at ¶ 58). Yet, Plaintiffs allege that CRG never sought a Special Exception, nor did Defendants or its agents ever advise CRG it needed to obtain one. (*Id*. at ¶¶ 59-63, 65-66, 69-70, 72-73). Though CRG did not seek or obtain a Special Exception, the Borough Planning Commission conditionally approved the application on August 9, 2005 and ultimately, the Borough Council approved the application. (*Id*. at ¶¶ 62, 64). "In reliance upon the Defendants' inappropriate and illegal actions, a permit [and Certificate of Occupancy were] eventually issued for the construction and occupancy of the Dunkin' Donuts." (*Id*. at ¶¶ 77-78).

In addition to being a bakery and drive-in "eating and drinking establishment," "a few years after the illegal variance was granted," the Dunkin' Donuts became a "manufacturing facility and a full bakery distributor" in violation of the Borough Zoning Ordinances. (*Id*. at ¶¶ 79-80, 86-87). Despite Plaintiffs' complaints, the Borough did nothing to enforce its

Ordinances against Dunkin' Donuts. (*Id.* at ¶¶ 81, 89-96). To facilitate its manufacturing and distribution practices, the Dunkin' Donuts loads tractor trailers with bakery products at its facility, which was not part of its original zoning application. (*Id.* at ¶¶ 83-85).

Plaintiffs "have been forced to listen to an extremely loud drive-thru speaker which was not ever identified on the initial Plot Plan, or subsequent plans filed with the Borough." (*Id.* at ¶ 91). "On or about October 2, 2006, Forty Fort Borough Council enacted a Noise Ordinance which provided specific and detailed requirements and prohibitions regarding noise in the Borough." (*Id.* at ¶ 97). Despite Plaintiffs' complaints regarding noise from the Dunkin' Donuts in violation of the Noise Ordinance, neither Defendants nor the Borough Police have taken actions to enforce the Noise Ordinance against Dunkin' Donuts. (*Id.* at ¶¶ 98-104). "Adding further insult to injury, after numerous complaints were lodged by [Plaintiffs] to Forty Fort, the Defendants intentionally amended the Noise Ordinance in 2012 specifically to loosen restrictions and ignore issues created by noise, including the loud drive-thru, which was never approved, and the 24-hour truck traffic." (*Id.* at ¶ 106).

Plaintiffs have filed suit against the Borough and the Zoning Hearing Board for failure to enforce the Municipalities Planning Code ("MPC") and Forty Fort Zoning Ordinances under 53 P.S. § 10617 (Count I), an action in mandamus to require the Borough to enforce the applicable provisions of the Forty Fort Zoning Ordinance, Noise Ordinance, and Municipalities Planning Code (Count II), and violation of the due process and equal protection clauses under the Fourteenth Amendment to the Constitution (Count III).

### III. Standard of Review

#### a. Motion to Dismiss

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio–Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114,118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n. 14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the

6

elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### b. Conversion to Motion for Summary Judgment

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).

If the Court considers evidence outside of the pleadings, it may convert the motion to dismiss into a motion for summary judgment. When a motion to dismiss has been alternately framed as a motion for summary judgment, the Court need not provide the parties with express notice of conversion. *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 288-89 (3d Cir. 1999); *see also Carver v. Plyer*, 115 F. App'x 532, 536 (3d Cir. 2004) ("motions for summary judgment that are presented to the court as motions in the

alternative constitute sufficient notice to a non-moving party that the court may convert a motion to dismiss into a motion for summary judgment.").

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

### c. Motion to Dismiss under Rule 12(b)(7)

In addition to their motion filed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, Defendants also move to dismiss under Rule 12(b)(7) for failure to join a party under Rule 19, which states:

A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . (i) as a practical matter impair or impede the person's ability to protect the interest.

FED. R. CIV. P. 19(a)(1)(B)(i).

## IV. Analysis

### a. Count I: Rule 12(b)(7) motion

Defendants contend that the Millingtons t/d/b/a Compass Rose Group, and May Brands, LLC (which operates the Dunkin' Donuts) should be joined as indispensable parties to the case. (Doc. 3, at 29).

Plaintiffs respond that they are not required to join these entities as defendants because "they did not . . . do anything which gave rise to the causes of action against the Defendants." (Doc. 8, at 32). "In the alternative, the Plaintiffs request that this Honorable Court permit an amended Complaint to add the Compass Rose Group and May Brands, LLC." (*Id.*).

Defendants are correct that if Plaintiffs wish to pursue a cause of action under Section 10617, they must add these parties as defendants. Any relief that Plaintiffs might obtain under 53 P.S. § 10617 for Dunkin' Donuts' alleged violations of Forty Fort's zoning ordinances would necessarily impact its owners and operators. "Pennsylvania courts hold that property owners are indispensable parties to lawsuits affecting their property rights." *Bell v. Twp. of Spring Brook*, No. 2253 C.D. 2012, 2013 WL 3481860, at *8 (Pa. Commw.

Ct. July 11, 2013) (holding that "the relief sought by Bell would directly affect the Millans' property rights. . . . Thus, the Millans are indispensable parties. . . . The failure to join the Millans (and Millan Blacktopping) deprived the trial court of subject matter jurisdiction, and it provides an alternative basis for dismissal of Bell's suit.") (citing *Fulton v. Bedford Cnty. Tax Claim Bureau*, 942 A.2d 240, 244 (Pa. Commw. Ct. 2008)).  In fact, in other cases, landowners have taken advantage of the availability of a private cause of action under Section 10617 to bring suits against their neighbors for alleged violations of the local zoning ordinances.  *See, e.g., Geneva House, Inc. v. Minsec of Scranton, Inc.*, 25 A.3d 427 (Pa. Commw. Ct. 2011); *Peden v. Gambone Bros. Dev. Co.*, 798 A.2d 305 (Pa. Commw. Ct. 2002); *Siegmond v. Duschak*, 714 A.2d 489 (Pa. Commw. Ct. 1998).

Therefore, the Court will grant Defendants' motion to dismiss under Rule 12(b)(7), but grant Plaintiffs leave to amend their complaint to allege a cause of action against the Millingtons and May Brands, LLC, under 53 P.S. §10617.

Additionally, as the Amended Complaint currently stands, Plaintiffs are suing Defendants Forty Fort Borough and the Borough Zoning Hearing Board under 53 P.S. § 10617 in Count I. Specifically, Plaintiffs ask this Court to find Defendants "willfully, intentionally, and in bad faith, violated the aforesaid sections of the Forty Fort Borough Zoning Ordinance . . . and award the Plaintiffs an amount in excess of Fifty Thousand Dollars ($50,000.00)." (Am. Compl. at 23).

Plaintiffs are not entitled to seek this remedy against the present Defendants under Section 10617. *See Buffalini by Buffalini v. Shrader*, 535 A.2d 684, 687 (Pa. Commw. Ct. 1987). There, the Commonwealth Court noted that the parties had failed to "direct[] our attention to a case in which a municipality has been held liable for damages for an alleged failure to enforce a zoning ordinance. Enforcement actions generally arise in the context of mandamus or equity actions." *Id*. The *Buffalini* court then quoted the dispositive portion of 53 P.S. § 10617 in force at the time:

> In case any building, structure, or land is, or is proposed to be, erected, constructed, reconstructed, altered, converted, maintained or used [in] violation of any ordinance enacted under this act or prior enabling laws, the governing body . . . *may institute* in the name of the municipality any appropriate action or proceeding to prevent, restrain, correct or abate such building, structure or land, or to prevent, in or about such premises, any act, conduct, business or use constituting a violation.

*Id*. (emphasis in original). The *Buffalini* court went on to hold that "[t]his section is clearly intended to grant municipalities the authority to enforce its ordinances under the conditions set out in the statute but its permissive language does not mandate that enforcement in all circumstances." *Id*. at 687-88. Therefore, a municipality could not be liable for damages for failure to bring an enforcement action against an offending landowner.[2]

---

[2] Furthermore, under the Pennsylvania Political Subdivision Tort Claims Act ("Act"), "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. CONS. STAT. § 8541. Unless Plaintiffs can show that Defendants' conduct falls within an exception to the Act, damages under 53 P.S. § 10617 are unavailable against the Borough of Forty Fort and its ZHB.

Therefore, because Plaintiffs may not seek damages against the Borough of Forty Fort or the ZHB for alleged failures to enforce the local zoning ordinances, Count I against these defendants will be dismissed with prejudice.

### b. Count II: Mandamus

Plaintiffs also sue Forty Fort Borough and the ZHB for mandamus, asking this Court to order Defendants to enforce the Forty Fort Zoning Ordinance and MPC. Plaintiffs claim they are entitled to seek mandamus relief, citing *Chanceford Aviation Prop., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099 (Pa. 2007). Defendants, relying on *Hanson v. Lower Frederick Twp. Bd. of Supervisors*, counter that Plaintiffs cannot seek mandamus relief because they have an alternative and adequate remedy available to them through 53 P.S. § 10617. 667 A.2d 1221 (Pa. Commw. Ct. 1995). The Court agrees with Defendants.

"Mandamus is an extraordinary writ that will only lie to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other appropriate or adequate remedy." *Jackson v. Vaughn*, 777 A.2d 436, 438 (Pa. 2001). *Chanceford* is inapplicable to this case because there, the Pennsylvania Supreme Court held that the Airport Zoning Act ("AZA") "commands that municipalities with airport hazard areas enact and carry out airport zoning regulations. Since the Township has a public airport, and thus airport hazard areas, it must comply with the legislature's mandate. Hence, appellants have a clear right to have

the Township enact airport zoning regulations in accordance with the AZA." 923 A.2d at 1108. Furthermore, the appellants had no alternative avenues of relief.

Here, Plaintiffs may pursue a private cause of action seeking injunctive relief against CRG, the Millingtons, and May Brands, LLC under 53 P.S. § 10617. Therefore, mandamus is not warranted because Plaintiffs have an alternative and adequate remedy available to them. In fact, the Commonwealth Court explicitly said so in *Hanson*. There, the appellant "filed a complaint in mandamus" seeking "an order requiring the Lower Frederick Township (Township) Supervisor to enforce the Township zoning ordinance against an adjoining property owner, Perkiomen Enterprises, Inc." 667 A.2d at 1222. Although Hanson brought his suit under Section 910.1 of the MPC, the Commonwealth Court affirmed the trial court's dismissal of the complaint "because the MPC specifically provides the procedure by which an adjoining landowner can seek relief from a violation of the zoning laws by his neighbor" through "Section 617 of the MPC." *Id*. The Commonwealth Court held that Section 617 "provides for a more direct and orderly procedure than an action in mandamus, which would at most order the Township to enforce ordinances and probably precipitate more litigation directly involving Perkiomen." *Id*. at 1223. Therefore, because "section 617 provides Hanson with a remedy, mandamus under such circumstances is not appropriate." *Id*.

The Commonwealth Court approved of its holding in *Hanson* in the recent case of *Bell v. Township of Spring Brook*, which involved a very similar set of facts. No. 2253 C.D.

13

2012, 2013 WL 3481860 (Pa. Commw. Ct. July 11, 2013). In *Bell*, the Commonwealth Court noted,

> [s]imilar to the plaintiff in *Hanson*, Bell seeks an order compelling the Township to investigate and, where appropriate, enjoin or prohibit the zoning ordinance violations. . . . As in *Hanson*, because Section 617 of the MPC provides Bell with an adequate remedy at law, a mandamus action seeking to compel the Township to enforce its zoning ordinance is not appropriate.

*Id.* at \*6. Plaintiffs point to the Borough's own Zoning Ordinances which seem to mandate action by Defendants: "Whenever a violation of this Chapter occurs, any person may file a complaint in regard thereto. All such complaints must be in writing and shall be filed with the Zoning Officer, *who shall properly record such complaint and immediately investigate and report thereon.*" FORTY FORT, PA., ZONING ORDINANCES ch. 27, § 905 (2009) (emphasis added). Furthermore, "[i]f it appears to the Borough that a violation of this Chapter has occurred, the Borough *shall initiate enforcement proceedings* by sending an enforcement notice as provided in this Section." *Id.* § 907.1 (emphasis added). Despite this mandatory language, however, because Plaintiffs possess an adequate remedy under 53 P.S. § 10617, any alleged failure to investigate Dunkin' Donuts' violations of the Zoning Ordinances or to initiate enforcement proceedings against Dunkin' Donuts are not grounds for a mandamus action against either the Borough or the ZHB.

The remainder of Plaintiffs' allegations in Count II pertain to Defendants' failures to adhere to their own policies in 2005 and the procedures outlined in the MPC under Section 10908, including when they failed to "conspicuously post" notice of an upcoming hearing

about a variance, granted that variance for Dunkin' Donuts, failed to create a stenographic record of the proceedings, failed to issue a written decision after approving the variance, and approved the zoning application in violation of the zoning ordinance.

The Court will first address Defendants' alleged failure to issue a written decision. Section 908(9) of the MPC provides:

> The board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board or hearing officer. . . . where the board fails to render the decision within the period required by this subsection or fails to commence, conduct or complete the required hearing as provided in subsection (1.2), the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time. When a decision has been rendered in favor of the applicant because of the failure of the board to meet or render a decision as hereinabove provided, the board shall give public notice of said decision within ten days from the last day it could have met to render a decision in the same manner as provided in subsection (1) of this section. If the board shall fail to provide such notice, the applicant may do so. Nothing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction.

The Court notes that under 53 P.S. § 10908(9), a "deemed decision" may be the subject of a mandamus action.

> A mandamus action is the proper vehicle to force the issuance of a zoning permit that has been deemed approved because the zoning hearing board has not met the 45–day deadline. The merits of the application are irrelevant; a board's inaction will subject it to a writ of mandamus ordering a deemed decision.

*Gibraltar Rock, Inc. v. New Hanover Twp. Zoning Hearing Bd.*, 68 A.3d 1012 (Pa. Commw. Ct. 2013) (affirming the trial court's dismissal of the plaintiffs' complaint in mandamus

regarding their applications to operate quarries). Despite the existence of a clear right to an action in mandamus, the MPC and case law indicate that it is the *applicants* who hold that right, not an opposing landowner. *See, e.g., Magyar v. Zoning Hearing Bd. of Lewis Twp.*, 885 A.2d 123, 129 (Pa. Commw. Ct. 2005) ("an *applicant* may file a statutory appeal or a mandamus action to determine the existence of a deemed approval.") (emphasis added); *see also WeCare Organics, LLC v. Zoning Hearing Bd. of Schuylkill Cnty.*, 954 A.2d 684, 691 (Pa. Commw. Ct. 2008) ("WeCare has a clear legal right to the granting of a deemed approval *of its application* and that the ZHB has a duty to approve that application.") (emphasis added). Opposing landowners, such as the McLaughlins, hold the right "to appeal the [deemed] decision to a court of competent jurisdiction." 53 P.S. § 10908(9). "[A] deemed zoning board approval no more cuts off the right to an appeal on the merits than would a timely board decision approving an application." *Ulsh v. Zoning Hearing Bd. of Lower Paxton Twp.*, 22 A.3d 244, 252 (Pa. Commw. Ct. 2011) ("Accordingly, the timely appeal of a deemed approval is an appeal of the merits of a variance approval in the same manner as an appeal of a timely board decision approving a variance application."). Therefore, Plaintiffs have no right to mandamus on the basis of a deemed approval.

As for the rest of Plaintiffs' allegations of Defendants' procedural violations, when zoning boards do not follow proper procedure, plaintiffs normally file statutory appeals instead of seeking mandamus relief. *See, e.g., Swift v. Zoning Hearing Bd. of E. Hempfield Twp.*, 340 A.2d 592, 593 (Pa. Commw. Ct. 1975) ("We must dispose of this appeal by Mr.

Swift by remanding for rehearing because the Zoning Hearing Board did not comply with Section 908(7) . . . , which requires the Board to keep a stenographic record and transcript of the proceedings."); *Eaton v. Zoning Hearing Bd. of Borough of Wellsboro*, 471 A.2d 919, 920 (Pa. Commw. Ct. 1984) (on the plaintiff's appeal, reversing the trial court's affirmance of the zoning hearing board despite the lack of notice posted on the affected property). This is so because there exists an "appropriate or adequate remedy" in the form of a statutory appeal. *See Gibraltar Rock*, 68 A.3d 1012.

In Count II of the Amended Complaint, Plaintiffs have not alleged they have taken any statutory appeals for Defendants' alleged violations of the MPC or Forty Fort's Zoning Ordinance. It is not for this Court to give Plaintiffs direction as to whether or not they should attempt to avail themselves of statutory appeals to the Court of Common Pleas of Luzerne County, but mandamus is not the proper remedy.

Finally, the Court notes that the two cases Plaintiffs rely on are inapposite to Count II. First, Plaintiffs cite *In re Appeal of Booz* for the proposition that they are entitled to a new hearing on the variance that was improperly granted in March 2005. 533 A.2d 1096 (Pa. Commw. Ct. 1987). However, in *Booz*, the zoning hearing board had provided proper notice of an upcoming hearing regarding an application for a variance, but the board determined during its deliberations that the application was also partially for a special exception. The Commonwealth Court held that the objectors were entitled to notice and a second hearing to raise objections to the "alternate legal theory" of a special exception

rather than a variance. "[W]hen the Board ultimately recognizes that the appropriate zoning relief is not that specified in the application, it must afford any objectors to the application a fair opportunity to present relevant evidence in opposition." *Id.* at 1099. Here, the notice published in the *Citizen's Voice* was for a variance, and a variance was granted at the March 1, 2005 hearing. There are no indications that any alternate legal theories were raised. Plaintiffs also cite to *Falker v. Lower Windsor Twp. Zoning Hearing Bd.*, 988 A.2d 764 (Pa. Commw. Ct. 2010). There, the Commonwealth Court stated, "When a statute fixes the time within which an appeal may be taken, a court may not extend that time period or allow an appeal *nunc pro tunc* absent a showing that extraordinary circumstances involving fraud or its equivalent, duress, or coercion caused the delay in filing an appeal." *Id.* at 770, n.7. Though Plaintiffs hint that the Defendants' inadequate or untruthful responses to their Open Records requests were fraudulent, they have alleged no fraud pertaining to notice of the alleged violations of zoning ordinances committed by either of the defendants or Dunkin' Donuts.

Because Plaintiffs may not sustain a mandamus action against Defendants Forty Fort Borough and the Borough's ZHB, the Court will grant Defendants' motion to dismiss Count II of the Amended Complaint and dismiss Count II with prejudice. As previously noted, Plaintiffs are granted leave to state a cause of action under 53 P.S. § 10617 against CRG, the Millingtons, and May Brands, LLC consistent with this opinion.

c. <u>Count III: Plaintiffs' Federal Claims under 42 U.S.C. § 1983</u>

To establish a *prima facie* case under 42 U.S.C. § 1983, plaintiffs must demonstrate that: (1) they were deprived of a federal right; and (2) the person who deprived them of that right acted under color of state law. *Burrella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007). Section 1983 is not an independent source of substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004). Plaintiffs are bringing claims pursuant to the Due Process and Equal Protections Clauses of the Constitution.

### i. Procedural Due Process

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law." *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (internal citations and quotation marks omitted). "It is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Attorney Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006).

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain

benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972). "State law does not define the parameters of due process for the purposes of the Fourteenth Amendment. Rather, federal law defines those parameters." *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 195 (3d Cir. 2009) (internal citations omitted).

It is beyond dispute that under Pennsylvania state law, an owner of a residential property has a protected property interest. Pennsylvania also has provided a platform for owners of property to participate in discussions regarding zoning ordinances that will impact their property. *See* 53 P.S. § 10908(3) ("The parties to the hearing shall be the municipality, *any person affected by the application who has made timely appearance of record before the board*, and any other person including civic or community organizations permitted to appear by the board."). The undisputed evidence shows, however, that Plaintiffs purchased their home on Yates Avenue on December 14, 2005 (Dec. 14, 2005 Deed, Doc. 3, Ex. 4; Doc. 8, at 2), while the bulk of the allegations of the Complaint arose prior to the Plaintiffs' ownership of the home.[3]

---

[3] The Court relies on the December 14, 2005 Deed because the date of Plaintiffs' acquisition of their residence on Yates Avenue is central to when their property interests were created, Plaintiffs have acknowledged that they purchased their home in December 2005, and they would not be prejudiced by the Court's reliance on this Deed in disposing of Defendants' motion to dismiss.

As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to . . . the complaint may be considered without converting the motion to dismiss into one for summary judgment. The rationale underlying this exception is that the primary problem raised by

For instance, Plaintiffs claim that a hearing was held on March 1, 2005 to address concerns which the zoning officer had raised, including a variance that CRG had never requested. (Am. Compl. at ¶¶ 18-25, 29, 31-33). Although the Minute Sheet reflects that the Board approved the variance, there were no findings of record, there was no stenographer present, and the ZHB failed to issue a written decision on the matter, all of which are violations of the MPC. (Id. at ¶¶ 34-36, 42-43). Plaintiffs further allege that following the approval of the variance on March 1, 2005, Defendants failed to require a special exception application from CRG and ultimately approved CRG's zoning application for construction of the Dunkin' Donuts. (Id. at ¶¶ 47-51, 58-63, 65-66, 69-70, 72-73, 77-78; September 19, 2005 Minute Sheet, Doc. 3, Ex. 8 (granting conditional approval)).

Even assuming that all of these allegations are true, Plaintiffs simply did not have a protected property interest in their home at the time of these alleged violations of the MPC in 2005 (i.e., for the period prior to December 14, 2005).[4] Therefore, they were not entitled to any procedural due process considerations under federal law. Plaintiffs argue that through Defendants' "misconduct," Plaintiffs' predecessors in interest (the Hagens) were

---

looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint.

*In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 285, n.12 (3d Cir. 2010) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

[4] Defendants argue that the final subdivision plan "was approved by the Borough Engineer in September, 2005, recommended for approval by the Borough's Planning Commission in September, 2005, and approved by Borough Council on September 19, 2005." (Doc. 3, at 5). However, the Minute Sheet from the September 19, 2005 meeting indicate only a conditional approval for the land development plan. As such, the Court is unaware of when final approval was granted and when the Dunkin' Donuts completed construction. Because Defendants' exhibits outside the pleadings do not provide a complete record, the Court will not convert their motion into one for summary judgment. When Plaintiffs file their Second Amended Complaint, they are directed to allege facts sufficient for this Court to determine whether they had a property interest in their home when ultimate approval was granted on the application for Dunkin' Donuts.

prevented from asserting their (the Hagens') procedural due process rights. Plaintiffs, however, cannot claim any alleged violations of the Hagens' procedural due process rights as their own. To the extent that Plaintiffs raise procedural due process violations arising from events that took place prior to their ownership of their home in December 2005, those claims fail for lack of a protected property interest.[5] Therefore, the Court will grant Defendants' motion to dismiss Plaintiffs' procedural due process claims contained in Count III for events occurring before Plaintiffs obtained their property interest in December 2005 but will grant leave to amend to allege when the ZHB ultimately approved the application for Dunkin' Donuts.

The Complaint goes on to allege that "a few years after the illegal variance was granted," the Dunkin' Donuts became a "manufacturing facility and a full bakery distributor" in violation of the Borough Zoning Ordinances. (Compl. at ¶¶ 79-80, 86-87). Despite Plaintiffs' complaints, the Borough did nothing to enforce its Ordinances against Dunkin' Donuts. (*Id.* at ¶¶ 81, 89-96). Finally, Plaintiffs allege that after the Borough enacted its Noise Ordinance in 2006, neither it nor the police acted on Plaintiffs' complaints about Dunkin' Donuts' multiple violations of the Ordinance, including "an extremely loud drive-thru speaker which was not ever identified on the initial Plot Plan, or subsequent plans filed with the Borough." (*Id.* at ¶¶ 91, 97-104). "Adding further insult to injury, after numerous complaints were lodged by [Plaintiffs] to Forty Fort, the Defendants intentionally amended

---

[5] Those claims would also be vulnerable to a statute of limitations challenge. *See Chambers*, 587 F.3d at 194, n.24 (finding that § 1983 procedural due process claims are governed by Pennsylvania's two-year statute of limitations).

the Noise Ordinance in 2012 specifically to loosen restrictions and ignore issues created by noise, including the loud drive-thru, which was never approved, and the 24-hour truck traffic." (*Id.* at ¶ 106).

With respect to Plaintiffs' complaints regarding Defendants' alleged failures after 2005, Plaintiffs have not alleged how Defendants deprived them of any procedural due process rights. Instead, Plaintiffs' complaints can be distilled into one argument that Defendants were indifferent to their complaints. Indifference to complaints alone does not amount to a procedural due process violation. Plaintiffs have not alleged that they were impaired or prevented from voicing their complaints. In fact, the Complaint alleges that Plaintiffs made numerous complaints to Defendants.

Pennsylvania law allows aggrieved parties to air their disputes to their local ZHB or to sue in state court. Plaintiffs have not alleged that these procedures were unavailable to them, or if they were, that they were inadequate. Instead, Plaintiffs raise three arguments in their Brief in Opposition to Plaintiffs' motion: 1) Plaintiffs abided by 53 P.S. § 10617 which requires "any aggrieved owner or tenant of real property who shows that his property or person will be substantially affected by the alleged violation" to provide "notice of that action . . . upon the municipality at least 30 days prior to the time the action is begun by serving a copy of the complaint on the governing body of the municipality," but after they provided such notice to Defendants on December 3, 2009, Defendants never "responded to this request and notice of intent to file suit," 2) in response to Plaintiffs' Open Records

request asking for "minutes from any Noise Control board hearing and/or meeting concerning requests for action or consideration relative to Dunkin' Donuts, noise levels from Dunkin' Donuts or the parties associated with Dunkin' Donuts," Defendants responded "Forty Fort Borough does not have a Noise Control Board," and 3) "the McLaughlins had requested to the Forty Fort Borough Council several times – on the record – that this matter be heard before the Noise Control Board," but "the Defendants fail[ed] to convene the Noise Control Board as required under the applicable ordinance." (Doc. 8, at 12-13, 16, n.5).

First, 53 P.S. § 10617 does not obligate Defendants to take any action in response to the thirty-day notice required of Plaintiffs before initiating suit. The statute sets forth only notice requirements, so the "failure" of Defendants to respond to the notice is in no way a violation of Plaintiffs' procedural due process rights. Second, Forty Fort's "denial" of the existence of a Noise Control Board in response to Plaintiffs' Open Records Request, whether untruthful or simply mistaken,[6] is not a denial of procedural due process to Plaintiffs. This answer did not deprive Plaintiffs of any procedural mechanism to voice their complaints about the noise levels generated by the neighboring Dunkin' Donuts. Third, Plaintiffs did not allege in their Amended Complaint that they requested hearings on their noise complaints but raised this argument in their brief only. Furthermore, they do not point to any provision in the Noise Ordinance (either the original in 2006 or the amended in 2011) that shows they

---

[6] The 2006 Noise Ordinance declares "[t]he Noise Control Board for the purposes of this Part shall be the Zoning Hearing Board of the Forty Fort Borough, which Board shall have full authority to carry out the duties of the Noise Control Board, . . ." (Doc. 3, Ex. M, at Section 2, Variances and Noise Control Board, ¶ 3). The 2011 Noise Ordinance does not contain a similar provision for a Noise Control Board. (Doc. 8, Ex. B).

were entitled to such a hearing before the Noise Control Board, despite their claim that "Defendants fail[ed] to convene the Noise Control Board as required under the applicable ordinance." (Doc. 8, at 16, n.5).

Based on the Court's reading of the 2006 Ordinance and 2011 Amended Ordinance, the Borough Police are responsible for enforcing the Noise Ordinance. (Doc. 3, Ex. M, Section 3.1; Doc. 8, Ex. B, Section 3.1) ("This Part shall be enforced by the Police Department of the Borough of Forty Fort.").[7] Plaintiffs, of course, are free to bring complaints to the attention of the police and they alleged that they have done so, but they have not alleged how the failure of the police to respond to those complaints is necessarily a violation of their procedural due process rights.[8]

---

[7] "Any person, firm, or corporation who shall violate any provision of this Part shall, upon conviction, thereof, be sentenced to pay a fine of not more than one thousand ($1,000.00) plus costs." Failure to pay such fine or costs will result in "a term of imprisonment not to exceed thirty (30) days." (2006 Ordinance, Doc. 3, Ex. M, Section 3.2; 2011 Ordinance, Doc. 8, Ex. B, Section 3.2).

[8] In fact, the United States Supreme Court has held that police have discretion to enforce statutes, even in the face of language mandating enforcement (which does not exist in the Noise Ordinances at issue here):

A well established tradition of police discretion has long coexisted with apparently mandatory arrest statutes.

"In each and every state there are long-standing statutes that, by their terms, seem to preclude nonenforcement by the police. . . . However, for a number of reasons, including their legislative history, insufficient resources, and sheer physical impossibility, it has been recognized that such statutes cannot be interpreted literally. . . . [T]hey clearly do not mean that a police officer may not lawfully decline to . . . make an arrest. As to third parties in these states, the full-enforcement statutes simply have no effect, and their significance is further diminished." 1 ABA Standards for Criminal Justice 1-4.5, commentary, pp. 1-124 to 1-125 (2d ed. 1980) (footnotes omitted).

The deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands, is illustrated by *Chicago v. Morales*, 527 U.S. 41, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999), which involved an ordinance that said a police officer " 'shall order' " persons to disperse in certain circumstances, *id.*, at 47, n. 2, 119 S. Ct. 1849. This Court rejected out of hand the possibility that "the mandatory language of the ordinance . . . afford[ed] the police no discretion." *Id.*, at 62, n. 32, 119 S. Ct. 1849. It is, the Court proclaimed, simply "common sense that all police officers must use some discretion in deciding when and where to enforce city ordinances." *Ibid.* (emphasis added).

Therefore, the Court will grant Defendants' motion to dismiss Plaintiffs' procedural due process claims contained in Count III but will grant Plaintiffs leave to amend to allege any further facts in support of their claim for procedural due process violations occurring after 2005. As to post-December 2005 events, Plaintiffs must show an entitlement to process, not just that there was no process available to them.

### ii. Substantive Due Process

Plaintiffs bring their substantive due process claim under the Fourteenth Amendment via § 1983 against all Defendants. Thus, the Court must determine whether "the behavior of a governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *United Artists Theater Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 402 (3d Cir. 2003) (abandoning the less stringent "improper motive" test in light of the Supreme Court's holding in *Lewis*). A defendant's "actions or inactions" may give rise to conduct that shocks the conscience. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004). The "shocks the conscience" standard is "designed to avoid converting federal courts into super zoning

---

*Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760-61, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005).

> Even if the statute could be said to have made enforcement of restraining orders "mandatory" because of the domestic-violence context of the underlying statute, that would not necessarily mean that state law gave *respondent* an entitlement to *enforcement* of the mandate. Making the actions of government employees obligatory can serve various legitimate ends other than the conferral of a benefit on a specific class of people. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 482, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) (finding no constitutionally protected liberty interest in prison regulations phrased in mandatory terms, in part because "[s]uch guidelines are not set forth solely to benefit the prisoner").

*Id.* at 764-65 (emphasis in original). Ultimately, the Court held that "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." *Id.* at 768.

tribunals." *Id.* Thus, a "bad-faith violation of state law remains only a violation of state law," and is "is insufficient to state a substantive due process claim." *United Artists*, 316 F.3d at 402.

Defendants argue that, even accepting all of Plaintiffs' factual allegations as true, none of the actions or inactions allegedly taken by Defendants amounts to conscience-shocking behavior. The Court agrees; it is clear that Plaintiffs must allege facts showing more than an improper motive behind Defendants' alleged inactions in failing to enforce the applicable borough ordinances. It is not enough to show that Defendants dislike Plaintiffs or perceive them as irritating citizens. *See Corneal v. Jackson Twp.*, 313 F. Supp. 2d 457, 464-65 (M.D. Pa. 2003) (granting the defendants' motion for summary judgment even though there was evidence that "Defendants intentionally opposed the Corneals' efforts, at least in part, because they did not like the Corneals. That is, they felt Mr. Corneal was a "trouble making yuppie from over the mountain."), *aff'd sub nom.*, 94 F. App'x 76 (3d Cir. 2004).

Thus, the Complaint fails to state a claim for which relief can be granted on Plaintiffs' substantive due process claims against Defendants. The Court will not act as a "super zoning tribunal," and will dismiss this claim with prejudice. *Eichenlaub*, 385 F.3d at 285.

### iii. Equal Protection

Plaintiffs do not argue that they are members of a class that have been accorded disfavored treatment by Defendants, but rather, proceed on a "class of one" theory. The Equal

Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. The United States Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000) (internal citations omitted). "Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (internal citations and quotation marks omitted).

Under Third Circuit law, to allege an equal protection claim founded on a "class of one" theory, a plaintiff need not "identify in a complaint actual instances where others have been treated differently." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 244 (3d Cir. 2008) (citing *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003)).[9]

Despite this relaxed pleading standard, Plaintiffs have not made out an equal protection claim. *See id.* at 244 ("Although *DeMuria* does relax the 'class of one' pleading requirements by negating the need for specificity, an allegation of an equal protection violation still must contain a claim that a plaintiff has been treated differently from others who are similarly

---

[9] The Second Circuit abrogated its decision in *DeMuria* in *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010), finding that the Supreme Court's ruling in *Iqbal* superseded the " 'general allegation' deemed sufficient in *DeMuria*." Nevertheless, this Court remains bound by *Phillips* and will utilize the more relaxed general allegation standard, as have other district courts in this Circuit. *See, e.g.*, *Hynoski v. Columbia Cnty. Redevelopment Auth.*, -- F. Supp. 2d --, 2013 WL 1703585, at *15 (M.D. Pa. Apr. 19, 2013); *Suber v. Guinta*, 902 F. Supp. 2d 591, 607 (E.D. Pa. 2012).

situated."). The only allegations that Plaintiffs raise in the Complaint as to their Equal

Protection are:

> 132. It is clear that Forty Fort and the ZHB have been and continue to apply the provisions of the Forty Fort Zoning Ordinance in a discriminatory manner, including, but not limited to the fact that they willfully and egregiously refuse to stop the operation of a bakery and a manufacturing facility in the district where it is not permitted, the same district and location where the McLaughlins are residents.
>
> 133. The Defendants, at all times relevant hereto, have known that the McLaughlins were concerned about this intentional lack of enforcement and their protection under the applicable Zoning Ordinance provisions, yet the Defendants have done absolutely nothing to provide relief to the McLaughlins.
>
> 134. Rather, the McLaughlins have been mocked at Forty Fort Council meetings by certain government officials.
>
> 135. The actions of the Defendants show a conscious discrimination against the McLaughlins and in favor of other individuals and entities, also residents of Forty Fort Borough.

(Am. Compl. at ¶¶ 132-135). The allegations do establish that *CRG* was treated differently

from Plaintiffs by being exempted from certain Zoning Ordinances (perhaps unlawfully so), but

CRG is not similarly situated to Plaintiffs. Plaintiffs have not alleged that other similarly situated

people (*i.e.*, other homeowners and residents of Forty Fort) received preferential treatment from

Defendants (*i.e.*, Defendants acted on those complaints either by correcting the zoning

violations or holding hearings on them) when the similarly-situated homeowners complained

about violations of zoning ordinances. Therefore, the Court will grant Defendants' motion to

dismiss Plaintiffs' equal protection claim but will grant Plaintiffs leave to amend to allege facts

showing that other similarly situated homeowners were treated differently by the Borough and the ZHB.

### d. Punitive Damages

Defendants move to strike Plaintiffs' request for punitive damages. It is well-settled that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011) (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981)).

Plaintiffs cite to *Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009) for the proposition that when defendants' conduct "involves reckless or callous indifference to the federally protected rights of others," punitive damages are available against a municipality. This portion of *Strickland*, however, dealt with the availability of punitive damages against *individual* defendants in their *individual* capacities, which does not apply here because currently, the only defendants are a municipality and its zoning hearing board. In fact, *Strickland* stands for the proposition that "a municipality cannot be liable for punitive damages." *Id.* Therefore, the Court will grant Defendants' motion to strike Plaintiffs' request for punitive damages against Defendants Forty Fort Borough and the Borough ZHB.[10]

---

[10] Defendants assert that the Court of Common Pleas of Luzerne County previously dismissed the claim for punitive damages when it granted Defendants' motions to strike. (Doc. 3, at 28). As proof of this prior ruling, Defendants attach the order from the Common Pleas Court. The order, however, merely states that "the Preliminary Objections in the form of Motions to Strike are GRANTED. IT IS FURTHER ORDERED THAT Plaintiffs shall file an Amended Complaint within twenty days after notice of this Order." (Doc. 3, Ex. 2). Based on this order alone, the Court is unable to divine the content of Defendants' motions to strike and what precise relief the Court of Common Pleas granted. Nevertheless, Plaintiffs should take care not to re-assert claims that either this Court dismisses or the Court of Common Pleas already has dismissed.

### e. Attorney's Fees

Defendants contend that Plaintiffs are not entitled to attorney's fees against them, citing the "American Rule," which states "the default rule in Pennsylvania [is] that litigants bear responsibility for their own attorneys' fees in the absence of express statutory authorization for fee awards, contractual fee-shifting, or some other recognized exception," and no such authorization applies here. *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 64 A.3d 1058, 1062 (Pa. 2013). Plaintiffs counter, however, that 53 P.S. § 10617.2 creates an express statutory authorization for attorney fees. (Doc. 8, at 31). That provision states:

> Any person, partnership or corporation who or which has violated or permitted the violation of the provisions of any zoning ordinance enacted under this act or prior enabling laws shall, upon being found liable therefor in a civil enforcement proceeding *commenced by a municipality*, pay a judgment of not more than $500 plus all court costs, including reasonable attorney fees *incurred by a municipality* as a result thereof.

53 P.S. § 10617.2 (emphasis added). Plaintiffs' reliance on this provision is misplaced. The action against Dunkin' Donuts and its proprietors must have been commenced by the Borough, and any attorney fees would be awarded to the municipality. As such, Plaintiffs have not shown any entitlement to attorney fees on their state law claims.

Nonetheless, Plaintiffs are also asserting a variety of federal claims under 42 U.S.C. § 1983. A "prevailing party" in a Section 1983 claim may be awarded attorney fees. "In any action or proceeding to enforce a provision of section[] . . . 1983, . . . of this title, the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the

costs." 42 U.S.C. § 1988(b). "Parties are considered prevailing parties if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 64 (3d Cir. 2013) (internal citations and quotation marks omitted).

Thus, while attorney fees are not available to Plaintiffs on their state law claims, they may be available on their federal claims if they prevail. Therefore, the Court will deny Defendants' motion to strike Plaintiffs' request for attorney fees.

f. Court Grants Leave to Amend Count III and to Assert a State Law Cause of Action against CRG, the Millingtons, and May Brands, LLC

Plaintiffs have requested leave to amend, and the Court will grant them leave to do so. The Third Circuit has held that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) *cert. denied*, 131 S. Ct. 1798, 179 L. Ed. 2d 655 (2011) (internal citations and quotation marks omitted).

Plaintiffs are granted leave to allege a cause of action against Cynthia Millington Brandreth, Mark Millington, Michelle Millington, and Scott Millington t/d/b/a Compass Rose Group, and May Brands, LLC under 53 P.S. § 10617. As to Count III, Plaintiffs are directed to amend their federal claims for procedural due process and equal protection to allege facts showing: that they obtained a property interest in their home on December 14, 2005, when the Borough granted ultimate approval for the Dunkin' Donuts application and any

32

further facts in support of their claim for procedural due process, and that similarly-situated homeowners received more favorable treatment from the Borough and ZHB when they complained of violations of zoning ordinances.

Failure to cure the above-mentioned defects shall result in dismissal with prejudice of those counts whose allegations are deemed insufficient.

## V. Conclusion

For the foregoing reasons, the Court will grant in part Defendants' Motion to Dismiss (Doc. 3). The Court will grant Defendants' motion to dismiss: (1) as to Count I, because Plaintiffs cannot recover damages against Forty Fort Borough and the Zoning Hearing Board under 53 P.S. § 10617, the claim will be dismissed with prejudice; (2) as to Count II, Plaintiffs' claim for mandamus against Forty Fort Borough and the Zoning Hearing Board will be dismissed with prejudice; (3) as to Count III, Plaintiffs' federal claims for procedural due process and equal protection will be dismissed without prejudice with leave granted to amend, while their claim for substantive due process will be dismissed with prejudice; (4) Plaintiffs' claims for punitive damages against the Borough and ZHB will be stricken; (5) Plaintiffs' claims for attorney fees pursuant to their state law claims will be stricken; and (6) Plaintiffs are granted leave to allege in a separate count a cause of action against Cynthia Millington Brandreth, Mark Millington, Michelle Millington, and Scott Millington t/d/b/a Compass Rose Group, and May Brands, LLC under 53 P.S. § 10617.

Finally, this opinion is notable for the extensive instructions offered to counsel to place this matter within the proper framework for subsequent determination. This was necessary in large part because the case law cited by Plaintiffs was inapposite to any of their claims. Plaintiffs' counsel is on notice that his next submissions must not contain similar shortcomings.

A separate Order follows.

Robert D. Mariani
United States District Judge