## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY McLAUGHLIN, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| **v.** | : | **3:13-cv-0016** |
| | : | **(JUDGE MARIANI)** |
| **FORTY FORT BOROUGH, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

### MEMORANDUM OPINION

### I.  Introduction

Before the Court is a Motion to Dismiss, or in the alternative, for Summary Judgment

(Doc. 34) filed by Defendants Forty Fort Borough (the "Borough") and Forty Fort Zoning

Hearing Board (the "Board" or "ZHB") (collectively, "Forty Fort Defendants"). For the

reasons set forth below, Forty Fort Defendants' Motion to Dismiss will be converted into a

Motion for Summary Judgment with regard to Plaintiffs' procedural due process claims

alleged in Count III and granted. The Court will deny Forty Fort Defendants' Motion to

Dismiss with respect to Plaintiffs' equal protection claims alleged in Count II.

### II.  Procedural History

Plaintiffs Jeffrey McLaughlin and Carol Skrip initiated this action on October 29, 2010

in the Luzerne County Court of Common Pleas. (*See* Notice of Removal, Doc. 1, ¶¶ 1-3).

After they amended their Complaint to allege violations of the Fourteenth Amendment, Forty

Fort Defendants removed the matter to federal court. (*See id.* at ¶¶ 4-5). The Amended

Complaint (Doc. 1-2, Ex. C) sought: damages for violations of the Pennsylvania

Municipalities Planning Code ("MPC") and Forty Fort Zoning Ordinances (Count I),

enforcement of the MPC and Forty Fort Zoning Ordinances through a mandamus action

(Count II), and damages for violations of Plaintiffs' constitutional rights (Count III).

On August 9, 2013, this Court granted Forty Fort Defendants' Motion to Dismiss

Plaintiffs' Amended Complaint but granted Plaintiffs leave to amend. (Mem. Op., Doc. 22, at

1). Specifically, the Court instructed Plaintiffs to allege: (1) a cause of action against Cynthia

Millington Brandreth, Mark Millington, Michelle Millington, and Scott Millington t/d/b/a

Compass Rose Group (collectively, "Millington Defendants") and May Brands, LLC; (2) facts

sufficient to make clear whether Plaintiffs had a property interest in their home at any point

prior to the due process violations alleged; and (3) facts showing that Forty Fort Defendants

treated other similarly situated homeowners more favorably. (Id. at 32-33).

Plaintiffs filed a Second Amended Complaint (Doc. 27) alleging that Millington

Defendants and May Brands, LLC violated the MPC and Forty Fort Zoning Ordinances

(Count I) and that Forty Fort Defendants violated their Fourteenth Amendment rights to

procedural due process (Count II) and equal protection (Count III).[1] Forty Fort Defendants

filed a Motion to Dismiss Counts II and III of the Second Amended Complaint, or in the

alternative, for Summary Judgment (Doc. 34). Forty Fort Defendants (Docs. 34, 44) and

---

[1] Neither the Amended Complaint nor the Second Amended Complaint states a statutory basis for Plaintiffs' constitutional claims. In its August 9, 2013 Opinion, the Court interpreted Plaintiffs' constitutional claims as being brought under 42 U.S.C. § 1983. (Doc. 22 at 19-20). Forty Fort Defendants' Brief in Support likewise construes Counts II and III as § 1983 claims. (Doc. 34 at 14-15). Plaintiffs' Brief in Opposition (Doc. 40) does not contest this characterization.

2

Plaintiffs (Doc. 40) have filed briefs. Millington Defendants and May Brands, LLC have not filed briefs. Discovery is now closed (Doc. 17), and the matter is now ripe for disposition.

### III. Statement of Undisputed Material Facts

The following facts are undisputed for the purposes of Forty Fort Defendants' Motion: On December 19, 2000, Millington Defendants purchased property in the Borough. (Pls.' Ex. B, Doc. 28). On February 14, 2005, they filed an application for a zoning permit to erect a structure on their property. (Pls.' Ex. C). Between February 17, 2005 and February 22, 2005, a Public Notice was published in the *Citizens' Voice*. (Pls.' Exs. F, G). It indicated that the Forty Fort Zoning Hearing Board would be holding a public meeting on March 1, 2005 to hear Millington Defendants' request for a variance. (*Id.*).

According to the minutes from the March 1, 2005 meeting, Millington Defendants' property was posted and their neighbors were notified of their application. (Pls.' Ex. H). At the meeting, the Millingtons stated that they intended to build a "Dunkin Donuts / Baskin Robbins" on their property. (*Id.*). The minutes indicate that the Chairman of the Board moved to approve the variance, and it is undisputed that the motion passed (*Id.*; Second Am. Compl. at ¶ 54).

On June 23, 2005, Millington Defendants filed a zoning application to the Borough requesting approval of their Dunkin' Donuts land development plan. (Pls.' Exs. H, N). Reilly Associates, the engineering firm representing Millington Defendants, sent the Borough Planning Commission copies of the "revised Dunkin' Donuts Final Subdivision and Land

3

Development Plan" on July 6, 2005. (Forty Fort Defs.' Ex. 6, Doc. 34-1). On July 12, 2005,

Borton Lawson Engineering, the engineering firm retained by the Borough, sent a letter to

the Planning Commission stating that it had reviewed the revised Dunkin' Donuts land

development plan. (Pls.' Ex. K). The letter indicated,

> For the purpose of this review, the plan is being considered for both
> preliminary and final plan compliance as it is our understanding there was no
> preliminary plan submission. Accordingly, it is recommended that plans be
> identified as "preliminary" or as "Preliminary/Final Plan" if deemed appropriate
> by the Planning Commission.

(*Id*. at ¶ 1).

On August 9, 2005, the Borough Planning Commission held a meeting in part to

discuss the Dunkin' Donuts land development plan. (Pls.' Ex. J). According to the meeting

minutes, the Borough Engineer's "Review was discussed and most issues [with the Dunkin'

Donuts land development plan] ha[d] been resolved." (*Id*.). The Commission was provided

with copies of: (1) the deed for the property, (2) the lease between Millington Defendants

and May Brands, LLC to run the Dunkin' Donuts, and (3) letters stating that the property

would have access to natural gas and water service. (*Id*.). Reilly Associates also informed

the Commission that it would soon receive a letter confirming that the property would have

access to electricity. (*Id*.).

Based on these submissions and representations, the Borough Planning

Commission granted conditional approval. (*Id*.). According to the meeting minutes, the

Commission approved the Dunkin' Donuts land development plan pending:

4

1. Receipt of a [Pennsylvania Department of Transportation ("PennDOT")] Highway Occupancy Permit for the driveway on Wyoming Ave.

2. Final approval of the Sewage Facilities Planning Module by the Pennsylvania [Department of Environmental Protection].

3. Addition of the "mounting curbing" at the rear access . . . to the drawings.

(*Id.*).

On September 19, 2005, the Borough Council met and discussed the Dunkin' Donuts land development plan. (Pls.' Ex. O). The meeting minutes reflect that the "Council reviewed the plans and discussed issues regarding the plans, architectural drawings, shade trees, layout, landscaping, and historic design." (*Id.*). Following the Council's review, it voted to follow the Planning Commission's recommendation to grant conditional approval. (*Id.*). The minutes indicate that the only remaining condition to be satisfied was the receipt of PennDOT approval. (*Id.*).

The "Dunkin' Donuts Subdivision" map—that the Borough's Engineer, Planning Commission, and Council approved—is identified as the "Preliminary/Final Subdivision Plan." (Pls.' Ex. N). On November 9, 2005, the Borough's Code Enforcement Officer issued a building permit for the Dunkin' Donuts land development plan. (Forty Fort Defs.' Ex. 7). On December 14, 2005, Plaintiffs purchased property in the Borough near the Dunkin' Donuts project site. (*See* Pls.' Exs. A, N). The Dunkin' Donuts opened at the end of May 2006. (Second Am. Compl. at ¶ 101).

## IV. Plaintiffs' Equal Protection Allegations

In addition to being a bakery and "drive-in eating and drinking establishment,"
between 2009 and 2012, the Dunkin' Donuts became a "manufacturing facility and a full
bakery distributor" for "other Dunkin Donuts facilities in the greater Wyoming Valley Area."
(*Id.* at ¶¶ 130-31, 138, 140). To facilitate its manufacturing and distribution, the Dunkin'
Donuts loaded "tractor trailers with manufactured bakery products at all hours of the day
and night for delivery to other Dunkin' Donuts" facilities. (*Id.* at ¶ 134). Plaintiffs were also
"forced to listen to an extremely loud drive-thru speaker[.]" (*Id.* at ¶ 144).

According to Plaintiffs, Forty Fort Defendants' handling of the Dunkin' Donuts land
development plan violated the MPC and Forty Fort Zoning Ordinances. (*Id.* at ¶ 185).
Plaintiffs allege that they complained about these violations "to the Forty Fort Borough
Council in 2009 at Borough meetings, and despite acknowledging that mistakes were made,
the Defendants, Forty Fort and the ZHB took absolutely no action to address the matter[.]"
(*Id.* at ¶ 207).

Plaintiffs further allege that while their complaints have been ignored, Forty Fort
Defendants have addressed similar issues raised by other Borough residents. According to
Plaintiffs, "[O]ther residents who had Dunkin' Donuts concerns were . . . appeased with
changes to the alley behind the Dunkin' Donuts and even off-street parking spaces for
certain residents." (*Id.* at ¶ 230). In another instance, Plaintiffs assert that Forty Fort

Defendants addressed the concerns of other residents who complained about excessive noise from nighttime deliveries at a gas station in the Borough. (*Id.* at ¶ 154).

## V. Standard of Review

### a. Motion to Dismiss

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio–Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114,118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is

entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

This "plausibility" determination will be a "context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id.*

### b.  Conversion to Motion for Summary Judgment

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are

presented to and not excluded by the court, the motion must be treated as one for summary

judgment under Rule 56. All parties must be given a reasonable opportunity to present all

the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

If the Court considers evidence outside of the pleadings, it may convert the motion to

dismiss into a motion for summary judgment. When a motion to dismiss has been

alternately framed as a motion for summary judgment, the Court need not provide the

8

parties with express notice of conversion. *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 288-89 (3d Cir. 1999); *see also Carver v. Plyer*, 115 F. App'x 532, 536 (3d Cir. 2004) ("[M]otions for summary judgment that are presented to the court as motions in the alternative constitute sufficient notice to a non-moving party that the court may convert a motion to dismiss into a motion for summary judgment.").

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

9

## VI. Analysis

As a preliminary matter, the Court will convert Forty Fort Defendants' Motion to

Dismiss into a Motion for Summary Judgment with regard to Plaintiffs' due process claims

(Count II). Because Forty Fort Defendants framed their Motion as a Motion to Dismiss, or in

the alternative, for Summary Judgment (Doc. 34), Plaintiffs had sufficient notice of the

possibility of conversion. See In re Rockefeller, 184 F.3d at 288-89; Carver, 115 F. App'x at

536 ("[M]otions for summary judgment that are presented to the court as motions in the

alternative constitute sufficient notice to a non-moving party that the court may convert a

motion to dismiss into a motion for summary judgment.").[2]

### a. Count II: Procedural Due Process

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life,

liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A procedural

due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property

interest protected by procedural due process, and (2) what procedures constitute due

process of law." Schmidt v. Creedon, 639 F.3d 587, 595 (3d Cir. 2011) (internal citations

and quotation marks omitted). "It is axiomatic that a cognizable liberty or property interest

must exist in the first instance for a procedural due process claim to lie." Mudric v. Attorney

Gen. of U.S., 469 F.3d 94, 98 (3d Cir. 2006).

---

[2] Moreover, Plaintiffs' Brief in Opposition discusses the possibility of conversion. (Doc. 40 at 11). It argues that conversion is inappropriate because the parties need more time for discovery. (Id.). However, fact discovery ended over a year ago. (Doc. 17). Plaintiffs have had ample time to object to the entry of summary judgment against them and have made such arguments in their Brief. (See, e.g., Doc. 40 at 25).

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972). "State law does not define the parameters of due process for the purposes of the Fourteenth Amendment. Rather, federal law defines those parameters." *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 195 (3d Cir. 2009) (internal citations omitted).

The Court's August 9, 2013 Opinion discussed the deficiencies of Plaintiffs' procedural due process claims in some detail. The Court noted that Plaintiffs purchased their home on December 14, 2005, but "the bulk of the allegations of the Complaint arose prior to the Plaintiffs' ownership of the home[.]" (Doc. 22 at 20). As a result, the Court concluded, "Plaintiffs simply did not have a protected property interest in their home at the time of these alleged violations of the MPC in 2005 (i.e., for the period prior to December 14, 2005). Therefore, they were not entitled to any procedural due process considerations under federal law." (*Id.* at 21).

With respect to Plaintiffs' allegations regarding post-December 2005 conduct, the August 9, 2013 Opinion stated:

> Plaintiffs have not alleged how Defendants deprived them of any procedural due process rights. Instead, Plaintiffs' complaints can be distilled into one

11

argument that Defendants were indifferent to their complaints. Indifference to complaints alone does not amount to a procedural due process violation. Plaintiffs have not alleged that they were impaired or prevented from voicing their complaints. In fact, the Complaint alleges that Plaintiffs made numerous complaints to Defendants.

Pennsylvania law allows aggrieved parties to air their disputes to their local ZHB or to sue in state court. Plaintiffs have not alleged that these procedures were unavailable to them, or if they were, that they were inadequate. . . .

Therefore, the Court will grant Defendants' motion to dismiss Plaintiffs' procedural due process claims . . . but will grant Plaintiffs leave to amend to allege any further facts in support of their claim for procedural due process violations occurring after 2005. As to post-December 2005 events, Plaintiffs must show an entitlement to process, not just that there was no process available to them.

(*Id.* at 23, 26).

Plaintiffs have filed a Second Amended Complaint. In their Brief, they argue that they have remedied the deficiencies in their procedural due process claims and that issues of fact exist that preclude the entry of the summary judgment against them. Plaintiffs allege procedural due process claims based on: (1) Pennsylvania's *void ab initio* doctrine for zoning appeals (2) Forty Fort Defendants' alleged failure to grant final approval for the Dunkin' Donuts land development plan, and (3) Forty Fort Defendants' post-December 2005 conduct.

### 1. Void *Ab Initio* Doctrine

Despite the Court's previous holding that Plaintiffs cannot state a claim for conduct that occurred prior to December 14, 2005, when Plaintiffs took ownership of their property (*id.* at 20-21), they attempt to resuscitate their pre-December 14, 2005 claims by relying on

12

the doctrine of void *ab initio*. Plaintiffs' reliance on the void *ab initio* doctrine is misplaced. This doctrine provides an exception to the Pennsylvania Judicial Code's and the MPC's time limits for appeals of zoning ordinances, 42 Pa. Cons. Stat. § 5571.1(e), and land use decisions, 53 Pa. Cons. Stat. § 11002.1-A(d). *See Schadler v. Zoning Hearing Bd. of Weisenberg Twp.*, 578 Pa. 177, 850 A.2d 619 (2004) (applying the void *ab initio* doctrine to challenges to zoning ordinances); *Luke v. Cataldi*, 593 Pa. 461, 932 A.2d 45 (2007) (extending *Schadler* to land use decisions).

The logic behind the doctrine is that the time limits provided for in 42 Pa. Cons. Stat. § 5571.1 and 53 Pa. Cons. Stat. § 11002-A cannot begin to run when a zoning ordinance or land use decision was never validly established from the outset. *See Hawk v. Eldred Twp. Bd. of Supervisors*, 983 A.2d 216, 218 n.1 (Pa. Commw. Ct. 2009) ("The doctrine of void *ab initio* is a legal theory stating that a statute held unconstitutional is void in its entirety and is treated as if it had never existed."); *Messina v. E. Penn Twp.*, 995 A.2d 517, 529 (Pa. Commw. Ct. 2010) *aff'd*, 619 Pa. 326, 62 A.3d 363 (2012) ("[I]f there was a violation of neighboring landowners' due process rights because of a failure to give public notice or hold a public hearing, the governing body's action would be void *ab initio*, and no valid decision was made. Further, while most appeals under the MPC must be filed within 30 days after entry of a decision, where no valid decision is made, there is no date of entry from which the appeal period can commence.")

Although Plaintiffs devote a substantial portion of their brief to developing a void *ab initio* argument (Br. in Opp., Doc. 40, at 13-20, 23-27), such an argument does not have a foundation in the Second Amended Complaint. Simply put: this case is not a zoning appeal. Plaintiffs have never asserted that the instant action is a zoning appeal pursuant either 42 Pa. Cons. Stat. § 5571.1 or 53 Pa. Cons. Stat. § 11002-A,[3] and the Court does not have jurisdiction to entertain a zoning appeal. This Court's only basis for jurisdiction is that Plaintiffs allege violations of the United States Constitution. Moreover, Plaintiffs do not cite, and the Court is unaware of, any case law that would support extending the void *ab initio* doctrine beyond the context of statutory zoning appeals.

However, even if the void *ab initio* doctrine applied, Plaintiffs fail to satisfy its statutory requirements. 53 Pa. Cons. Stat. §§ 11002-A and 11002.1-A govern appeals of land use decisions.[4] Section 11002-A(a) provides that all land use appeals "shall be taken to the court of common pleas of the judicial district wherein the land is located and shall be filed within 30 days after" the decision was rendered or deemed approved. Section 11002-A(a) further states, "It is the express intent of the General Assembly that, except in cases in which an unconstitutional deprivation of due process would result from its application, the

---

[3] In fact, in their previous submissions, Plaintiffs asserted that they were not required to bring a zoning appeal prior to filing their federal due process claims. (Doc. 8 at 10-12).

[4] In their Brief, Plaintiffs inappropriately apply the void *ab initio* doctrine articulated in 42 Pa. Cons. Stat. § 5571.1. Section 5571.1 is inapplicable here as it applies to procedural challenges to the "enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision." Here, Plaintiffs challenge Forty Fort Defendants' land use decisions regarding the Dunkin' Donuts land development plan, rather than a Borough ordinance. As a result, 53 Pa. Cons. Stat. §§ 11002-A and 11002.1-A, rather than 42 Pa. Cons. Stat. § 5571.1, apply.

30-day limitation in this section should be applied in all appeals from decisions." In appeals

where due process violations are alleged, § 11002.1-A governs.

Under § 11002.1-A(d), the void *ab initio* doctrine does not apply in zoning appeals of

land use decisions except:

(1) In the case of an appeal brought within the time period provided in section 1002-A(a), the party alleging the defect must meet the burden of proving that there was a failure to strictly comply with procedure.

(2) In the case of an appeal exempt from the time period provided in section 1002-A(a) or brought pursuant to section 108, the party alleging the defect must meet the burden of proving that because of the alleged defect in procedure alone:

(i) the public was denied notice sufficient to permit participation in the proceedings prior to the entry of the decision to the extent such participation was authorized by statute or ordinance; or

(ii) those whose substantive property rights were or could be directly affected by the entry of the decision were denied an opportunity to participate in proceedings prior to the entry of the decision.

Plaintiffs raise a procedural challenge to Forty Fort Defendants' land use decisions

prior to December 14, 2005. Specifically, Plaintiffs assert that the Zoning Hearing Board's

March 1, 2005 decision violated several provisions of the MPC. (Br. in Opp. at 13-14).

However, Plaintiffs did not bring an appeal within thirty days as provided for by § 11002-

A(a). Thus, if the void *ab initio* doctrine were to apply, Plaintiffs would need to satisfy the

requirements of § 11002.1-A(d)(2). Plaintiffs cannot meet these requirements.

It is undisputed public notice of the March 1, 2005 meeting was published in the

*Citizens' Voice* prior to the meeting. (Pls.' Exs. F, G). In addition, the notice indicated when

15

and where the meeting was to be held. (*Id*.). The notice also stated, "The purpose of the

meeting is to hear a request from the Compass Rose Group, represented by Mr. Mark

Millington, for a variance in order to construct a building on their property at 1312 Wyoming

Ave." (*Id*.). In accordance with the public notice, a public meeting was held on March 1,

2005. (Pls.' Ex. H). Thus, Plaintiffs cannot meet the requirements of § 11002.1-A(d)(2)(i).

Because it is also undisputed Plaintiffs did not own their property until December 14, 2005

(Pls.' Ex. A), they cannot meet the requirements of § 11002.1-A(d)(2)(ii).

Therefore, even if the Court were to construe the instant action as a zoning appeal,

which it is not, Plaintiffs' void *ab initio* argument would fail. This conclusion is not altered by

the cases cited by Plaintiffs. In support of their void *ab initio* argument, they cite *Schadler*,

850 A.2d 619, *Luke*, 932 A.2d 45, *Messina*, 995 A.2d 517, *Hawk*, 983 A.2d 216, and

*Cranberry Park Assocs.*, 561 Pa. 456, 751 A.2d 165 (2000). *Schadler* and *Cranberry Park*

involved challenges to zoning ordinances that were found to be void *ab initio*. *Schadler*, 850

A.2d 627-28; *Cranberry Park Assocs.*, 751 A.2d at 166-67 (involving an ordinance that "was

never signed, dated, numbered or recorded"). Not only did these cases not involve land use

decisions or apply § 11002.1-A, they were handed down before the Pennsylvania General

Assembly enacted 42 Pa. Cons. Stat. § 5571.1, which restricted the void *ab initio* doctrine in

the context of challenges to zoning ordinances. § 5571.1(b) ("Except as provided in

subsection (c), it is the express intent of the General Assembly that this 30-day limitation

16

shall apply regardless of the ultimate validity of the challenged ordinance."); *see also Hawk*, 983 A.2d at 221-22.

Additionally, *Schadler* concerned the enactment of a zoning ordinance without "pre-enactment newspaper advertisements that contained the full text of the Ordinance, a brief summary of the Ordinance, or any information regarding a place where the public could examine the text of the Ordinance." 850 A.2d at 626. Similarly, in *Luke*, it was alleged that a conditional use permit was issued despite the fact that "no public notice was provided and no public hearings were conducted." 932 A.2d at 52. Here, in contrast, there was public notice prior to a public meeting that was held March 1, 2005. (Pls.' Exs. F-H). Finally, neither *Hawk* nor *Messina* support Plaintiffs' position, since those cases held that the void *ab initio* doctrine did not apply. *Hawk*, 983 A.2d at 224-25; *Messina*, 995 A.2d at 539.

In sum, Plaintiffs' void *ab initio* argument has no application in this case; but, if it had, it would have no merit.

### 2. Final Approval of the Dunkin' Donuts Land Development Plan

Plaintiffs allege that Forty Fort Defendants violated their due process rights because "no legal final approval [of the Dunkin' Donuts land development plan] has ever been considered and granted." (Second Am. Compl. at ¶ 106). They assert that the failure of Forty Fort Defendants to afford them an opportunity to "consider, question, examine or discuss the final plan in 2006 is a clear and unequivocal violation of their rights." (*Id.* at ¶ 111). Forty Fort Defendants maintain that the "Borough Council approved the Preliminary/

17

Final Plan at its meeting on September 19, 2005" and that this constituted final, albeit conditional, approval. (Br. in Supp., Doc. 34, at 17, 20). As a result, Forty Fort Defendants contend that Plaintiffs did not have an interest in their property until after final approval was granted and that, therefore, they cannot sustain their procedural due process claim. (Id. at 17-20). Further, Forty Fort Defendants assert that even if Plaintiffs had a property interest prior to the alleged due process violation, their claim would be time-barred. (Id. at 20).

### A. September 19, 2005 Approval

The undisputed facts indicate that the Borough granted final approval for the Dunkin' Donuts land development plan on September 19, 2005. (See Pls.' Ex. O). During its September 19, 2005 meeting, the Borough Council granted both preliminary and final approval. (Id.; Pls.' Ex. N). The approval was conditioned upon receipt of a PennDOT permit. (Pls.' Ex. O). Following the September 19, 2005 meeting, the Borough's Code Enforcement Officer issued Millington Defendants a building permit on November 9, 2005. (Forty Fort Defs.' Ex. 7). The Dunkin' Donuts opened for business in May 2006. (Second Am. Compl. at ¶ 101).

Because final approval was granted on September 19, 2005 and Plaintiffs did not acquire their property until December 14, 2005, Plaintiffs lacked a property interest at the time of final approval. As a result, they cannot maintain a procedural due process challenge regarding the final approval for the Dunkin' Donuts land development plan. This conclusion

is not altered by the fact that the September 19, 2005 approval was conditional or the fact that the Borough granted preliminary and final approval simultaneously.

Pennsylvania courts recognize that municipalities may grant "conditional final approval" and "preliminary/final approval" to land use applications. First, the Pennsylvania Commonwealth Court has explained that a final approval with conditions occurs when a municipality grants "final approval because it has exercised all the discretion over all matters over which it had discretion." *Morris v. S. Coventry Twp. Bd. of Supervisors,* 898 A.2d 1213, 1220 (Pa. Commw. Ct. 2006). In other words, when a land development plan satisfies all municipal requirements but not all state requirements, a municipality may grant final approval "conditioned on receipt of state agency approval permits." *Id.* at 1220-21 ("[A] municipality that grants final plan approval subject to the issuance of required state permits reflects the fact that the developer has satisfied the municipality's land use requirements, and is in conflict only with regulations of a state agency, and that any legal dispute regarding the issuance of the permits should involve the developer and the agency, not the municipality." (internal quotation marks omitted)).

Here, the minutes of the September 19, 2005 Borough Council Meeting reflect:

(a)     Borough Engineer Chris Borton stated that "the Planning Commission granted a conditional approval based on the receipt of the PennDOT permit;["]

(b)     Council "reviewed the plans and discussed issues regarding the plans[.]"

(c)     The Borough Council granted "a conditional approval to the Dunkin' Donuts Land Development Plan."

19

(Second Am. Compl. at ¶ 81 (citing Pls.' Ex. O)).

Plaintiffs do not allege that the Borough imposed any further conditions. Specifically,

Plaintiffs do not allege that the Borough imposed any further conditions based on Borough

Ordinances. Thus, the Borough granted final approval pending receipt of a PennDOT

permit.

Second, the Pennsylvania Commonwealth Court has recognized the possibility of

requesting preliminary and final approval for land development plans simultaneously. *See*

*Whitehall Manor, Inc. v. Planning Comm'n of City of Allentown*, 79 A.3d 720, 734-35 (Pa.

Commw. Ct. 2013). Quoting a Pennsylvania zoning law treatise, *Whitehall Manor* noted,

> As its name indicates, an application for 'final' approval represents the
> completion of the approval process. Generally it involves submission of plans
> corrected to meet conditions imposed by the preliminary approval, and the
> preparation of additional plans where required under the terms of that
> approval. *While some subdivision ordinances are drafted in terms which
> seem to require that a preliminary application precede an application for final
> approval, it is not at all clear that a municipality could reject a complete and
> conforming application for final approval simply because a preliminary
> application had not been filed.*
>
>                ****
>
> The [MPC] envisions both preliminary and final approval of subdivision plans.
> *That is not to say that a municipality may refuse to entertain an application
> seeking both preliminary and final approval of a subdivision plan which
> complies in all respects with the applicable ordinances,* but only that the
> municipality may establish procedures under which the normal sequence is
> the filing of a preliminary application, a decision on that application involving
> the imposition of conditions which must be satisfied prior to final approval,
> and, eventually, the filing of an application for final approval of the subdivision
> or land development.

*Id.* (quoting Robert S. Ryan, *Pennsylvania Zoning Law & Practice* §§ 11.2.1, 11.2.3

(2007 ed.) (brackets and italics in *Whitehall Manor*)).

Here, the Borough considered the preliminary and final Dunkin' Donuts land

development plans simultaneously. A July 12, 2005 letter from the Borough Engineer to the

Planning Commission stated,

> For the purpose of this review, the [Dunkin' Donuts land development] plan is
> being considered for both preliminary and final plan compliance as it is our
> understanding there was no preliminary plan submission. Accordingly, it is
> recommended that plans be identified as "preliminary" or as "Preliminary/Final
> Plan" if deemed appropriate by the Planning Commission.

(Pls.' Ex. K at ¶ 1).

Further, the "Dunkin' Donuts Subdivision" map, which was approved by the

Borough's Planning Commission and Council, follows the Borough Engineer's

recommendation and is identified as the "Preliminary/Final Subdivision Plan." (Pls.' Ex. N).

Plaintiffs do not allege that Forty Fort's Zoning Ordinances prohibit simultaneous preliminary

and final approval. To the contrary, they acknowledge in their Brief that preliminary and final

plans can be considered concurrently in some instances. (Br. in Opp., Doc. 40, at 24

("Plaintiffs admit that, in some circumstances, municipalities take an 'easy out' and approve

a plan for both 'preliminary' and 'final' approval simultaneously.")).

In sum, by granting conditional "preliminary/final" approval, the Borough determined

that although Millington Defendants still needed to attain a PennDOT permit, the Dunkin'

Donuts land development plan satisfied the necessary Forty Fort Ordinances and required no further Borough approval.

Plaintiffs dispute the legality of the Borough's decision and assert, *inter alia*, that the Borough should not have approved the plan without requiring a Special Exception. (Br. in Opp. at 17-18). Even assuming the Borough's actions violated its Zoning Ordinances, this would not change the fact that final approval, and the alleged due process violation, occurred on September 19, 2005. Plaintiffs also argue that the September 19, 2005 approval could not have been the final approval because a subdivision map includes dates subsequent to September 19, 2005. (Br. in Opp. at 21-25; Pls.' Ex. N). However, these dates do not, on their own, create an issue of fact as to when final approval was granted.

The only subdivision map provided to the Court indicates that it is one of nine maps. (Pls.' Ex. N). The dates on the map are offered without any factual context. Plaintiffs make several conclusory assertions that these dates demonstrate that the Borough Council should have been required to review the Dunkin' Donuts land development plan after December 14, 2005, when Plaintiffs acquired an interest in their property. Yet, Plaintiffs proffer no facts, allegations or legal authority to support these assertions. Moreover, they do not explain how the miscellaneous dates on the subdivision map are inconsistent with final approval being granted on September 19, 2005.[5]

---

[5] Plaintiffs argue that the map indicates that the Borough Council approved the Dunkin' Donuts land development plan on September 19, 2006, rather than September 19, 2005. (Br. in Opp. at 22). However, the summary judgment record, taken as a whole, demonstrates that final approval was granted on September 19, 2005. (Pls.' Ex. O). Plaintiffs do not dispute that there was a Borough Council meeting on

Therefore, the undisputed record reflects that the Borough granted final approval for the Dunkin' Donuts land development plan on September 19, 2005. Because Plaintiffs lacked an interest in their property until December 14, 2005, they cannot maintain a procedural due process claim on this basis.

B. *Statute of Limitations*

Even if Plaintiffs had a property interest when Forty Fort Defendants granted final approval, or even if final approval was never granted, Plaintiffs' claims would be time-barred. "The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." *Id.* (citing 42 Pa. Cons. Stat. § 5524(2)). "Federal law governs a cause of action's accrual date. Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Id.* (internal citations and quotation marks omitted).

Plaintiffs initiated this action on October 29, 2010. (*See* Notice of Removal at ¶¶ 1-3). Regardless of when, or whether, final approval was granted, Plaintiffs should have known of the alleged constitutional violation in 2006, when they assert the due process violation

September 19, 2005. (Second Am. Compl. at ¶ 80). Nor do they do dispute that there was no meeting held on September 19, 2006. (*Id.* at ¶ 92). Plaintiffs acknowledge, and the meeting minutes confirm, that conditional approval was granted during the September 19, 2005 meeting. (*Id.* at ¶¶ 81-82; Pls.' Ex. O). Further, Plaintiffs' assertion that the subdivision map demonstrates that final approval occurred on September 19, 2006 contradicts their claim that final approval was never granted. (Second Am. Compl. at ¶ 106). Finally, as demonstrated in the following section (VI.a.2.B), even if the Court were to accept that final approval was granted on September 19, 2006, Plaintiffs' claim would be time-barred.

occurred. (*See* Second Am. Compl at ¶ 111). On November 9, 2005, the Borough's Code Enforcement Officer issued a building permit for the Dunkin' Donuts. (Forty Fort Defs.' Ex. 7). "[T]he Dunkin' Donuts opened at the end of May, 2006." (Second Am. Cornpl at ¶ 101).

Plaintiffs allege, "At the earliest, the final plan would have to have been submitted sometime after April/May, 2006." (*Id*. at ¶ 102). At the latest, they state, the final plan should have been considered in July 2006. (*Id*. at ¶ 104). Plaintiffs posit, "[A]ny failure of [Plaintiffs] to have the right to consider, question, examine or discuss the final plan *in 2006* is a clear and unequivocal violation of their rights." (*Id*. at ¶ 111 (emphasis added)). Thus, Plaintiffs knew, or should have known, in 2006 that the Borough was not going to take further action on the Dunkin' Donuts land development plan.

While the Second Amended Complaint does not make clear precisely when in 2006 Plaintiffs knew or should have known of the alleged due process violation, it is clear the cause of action accrued sometime in 2006. As a result, Plaintiffs had until December 31, 2008, at the latest, to bring a timely § 1983 claim. *See Kach*, 589 F.3d at 634. Since Plaintiffs initiated this action on October 29, 2010, any potential procedural due process claim they could allege regarding the Borough's final approval, or lack of approval, of the Dunkin' Donuts land development plan would be time-barred. Plaintiffs certainly should have known before October 2010—over five years after the September 2005 approval and over four years after the Dunkin' Donuts opened for business—that Forty Fort Defendants had finalized the development plan, or were not going to act further.

24

In sum, Plaintiffs' procedural due process claim regarding the final approval, or lack of approval, for the Dunkin' Donuts land development plan is time-barred, because they allege a 2006 due process violation but did not initiate this action until 2010.

### 3. Post-December 2005 Conduct

Having determined that Plaintiffs cannot state a claim for conduct that occurred prior to December 14, 2005 and that the Borough's final approval occurred on September 19, 2005, the Court considers whether Plaintiffs can state a post-December 14, 2005 due process claim. The only post-December 2005 procedural due process violation Plaintiffs allege is that they were not "afforded any right to be heard on the issue of whether the Dunkin' Donuts could manufacture in a C1 district, which the Defendants admit is not permissible." (Br. in Opp. at 29).[6] Forty Fort Defendants argue that even if a zoning violation occurred, Plaintiffs have failed to offer any evidence, or any factual allegations, that would demonstrate that the processes available to Plaintiffs under Pennsylvania law were unavailable or inadequate. (Br. in Supp. at 21-22).

As the Court noted in its August 9, 2013 Opinion, "Pennsylvania law allows aggrieved parties to air their disputes to their local ZHB or to sue in state court. Plaintiffs have not alleged that these procedures were unavailable to them, or if they were, that they were inadequate." (Doc. 22 at 23). As a result, in granting Plaintiffs leave to amend, the

---

[6] The Second Amended Complaint also contains claims based on Forty Fort Defendants' alleged failure to enforce their Noise Ordinance. (Doc. 27 at ¶¶ 161-84). However, Plaintiffs' Brief in Opposition states that they "withdraw the[ir] due process claim as it relates to the Noise Ordinance." (Doc. 40 at 29).

Court instructed them "to allege any further facts in support of their claim for procedural due process violations occurring after 2005." (*Id.* at 26).

The Second Amended Complaint alleges no further facts demonstrating that existing Pennsylvania procedures were unavailable or inadequate. "A state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (internal citations and quotation marks omitted). Here, Plaintiffs acknowledge that 53 Pa. Cons. Stat. §§ 11002-A and 11002.1-A set forth procedures for appeals of land use decisions. (Br. in Opp. at 28). They also acknowledge that 53 Pa. Cons. Stat. § 10617 allows landowners to initiate an action "to prevent, restrain, correct or abate" a zoning violation. (*Id.* at 28-29). However, Plaintiffs did not seek relief under these statutes or before the Zoning Hearing Board.

Since Plaintiffs did not avail themselves of the procedural protections available under Pennsylvania law, they cannot sustain a federal procedural due process claim for conduct that occurred after December 14, 2005. Thus, the Court will convert Forty Fort Defendants' Motion to Dismiss Count II of the Second Amended Complaint into a Motion for Summary Judgment and grant it with regard to Plaintiffs' procedural due process claims.

b. Count III: Equal Protection

The United States Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally

26

treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000) (internal citations omitted). According to the Third Circuit, a plaintiff asserting a "class of one" claim "must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

In its August 9, 2013 Opinion, the Court instructed Plaintiffs to cure the deficiencies in their "class of one" equal protection claim by "alleg[ing] facts showing that other similarly situated homeowners were treated differently by the Borough and the ZHB." (Doc. 22 at 29-30). In their Second Amended Complaint, Plaintiffs allege that Forty Fort Defendants have addressed other Borough residents "excessive noise concerns" and "Dunkin' Donuts concerns" but have ignored their "complaints as to the noise issues at the Dunkin' Donuts." (Doc. 27 at ¶¶ 152, 230). Forty Fort Defendants contend that Plaintiffs fail to state a "class of one" claim since they do not allege facts sufficient to make plausible the existence of similarly situated individuals. (Br. in Supp. at 26-27).

"Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (internal citations and quotation marks omitted). Under Third Circuit law, to allege an equal protection claim founded on a "class of one" theory, a plaintiff need not "identify in a

27

complaint actual instances where others have been treated differently." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 244 (3d Cir. 2008) (citing *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003)).[7] Rather, "a general allegation that plaintiff has been treated differently from others similarly situated will suffice." *Suber v. Guinta*, 902 F. Supp. 2d 591, 607 (E.D. Pa. 2012); *Tomino v. City of Bethlehem*, 2010 WL 1348536, at *14 (E.D. Pa. 2010). "Determining whether an individual is 'similarly situated' to another individual is a case-by-case fact-intensive inquiry. *Suber*, 902 F. Supp. 2d at 607 (citing *Monaco v. American General Assurance Co.*, 359 F.3d 296, 305 (3d Cir. 2004)); *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 405 (M.D. Pa. 2013). "For that reason, some courts in this Circuit have stated that a final determination of this issue is inappropriate at the motion-to-dismiss stage." *Borrell*, 955 F. Supp. 2d at 405 (internal quotation marks omitted).

In *Tomino*, the only allegation the plaintiff made regarding similarly situated individuals was a general allegation that "the Defendants, in their individual capacities, conspired with each other . . . to engage in a pattern of harassment, selective enforcement of the law, and procedural abuses against Tomino, treating him differently than other similarly situated property owners." 2010 WL 1348536, at *14. The *Tomino* Court concluded, based on "the relaxed federal notice pleading standard, as specifically applied to

---

[7] The Second Circuit abrogated its decision in *DeMuria* in *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010), finding that the Supreme Court's ruling in *Iqbal* superseded the " 'general allegation' deemed sufficient in *DeMuria*." Nevertheless, this Court remains bound by *Phillips* and will utilize the more relaxed general allegation standard, as have other district courts in this Circuit. *See, e.g., Hynoski v. Columbia Cnty. Redevelopment Auth.*, 941 F. Supp. 547, 567 (M.D. Pa. 2013); *Suber v. Guinta*, 902 F. Supp. 2d 591, 607 (E.D. Pa. 2012).

the 'class of one' context by *Phillips*," that Tomino's general allegation "sufficiently allege[d]

that the City treated [him] differently than other, similarly situated property owners." *Id.* Here,

Plaintiffs make the general allegation that Forty Fort Defendants have addressed other

Borough residents' "excessive noise concerns" and "Dunkin' Donuts concerns" but have

ignored their "complaints as to the noise issues at the Dunkin' Donuts." (Doc. 27 at ¶¶ 152,

230). In addition, Plaintiffs proffer two potential comparators.

First, Plaintiffs allege that in 2009, "other Forty Fort residents . . . complain[ed] about

traffic behind the Dunkin' Donuts" and "were granted a change from a two-way street to a

one-way street, and one resident was granted two (2) off-street parking spaces[,] by the

Borough to alleviate their concerns." (*Id.* at ¶ 158). Second, they allege that in August and

September 2013, a Borough resident "complained to [the] Borough Council regarding the

noise emanating from a Sonoco [*sic*] Gas Station located" near the Dunkin' Donuts. (*Id.* at

¶ 153). According to Plaintiffs, the excessive noise "consist[ed] of deliveries between 7:00

PM and 7:00 AM" to the Sunoco station. (*Id.* at ¶ 154). Whereas Plaintiffs were allegedly

"ignored and ridiculed" for raising "complaints and requests" regarding the noise from the

Dunkin' Donuts, "which [we]re [of] exactly the same nature and cause as the situation with

the Sonoco [*sic*] Gas Station," Forty Fort Defendants took "affirmative action" to address the

noise issues associated with the Sunoco station. (*Id.* at ¶¶ 154-55).

In light of these allegations, Plaintiffs "allege facts sufficient to make plausible the

existence of . . . similarly situated parties." *See Perano v. Twp. of Tilden*, 423 F. App'x 234,

238 (3d Cir. 2011). Because Forty Fort Defendants' exhibits outside the pleadings do not address Plaintiffs' equal protection claim, the Court will not convert their Motion into a motion summary judgment with respect to Count III. Going forward, however, Plaintiffs will need to substantiate their allegations with evidence demonstrating that similarly situated Borough residents exist and were treated more favorably.

Thus, the Court will deny Forty Fort Defendants' Motion to Dismiss Count III of the Second Amended Complaint.

## VII. Conclusion

For the foregoing reasons, Forty Fort Defendants' Motion to Dismiss (Doc. 34) will be converted into a Motion for Summary Judgment with regard to Plaintiffs' procedural due process claims alleged in Count III and granted. The Court will deny Forty Fort Defendants' Motion to Dismiss with respect to Plaintiffs' equal protection claims alleged in Count II. A separate Order follows.

Robert D. Mariani
United States District Judge